### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### A. R. GIERINGER TOOL CORP., Respondent.

### No. 13874.

United States Court of Appeals Seventh Circuit.

March 8, 1963.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Gary Green, Attorney, National Labor Relations Board, Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Morton Namrow, Attorney, National Labor Relations Board, for petitioner.

Victor M. Harding, Whyte, Hirschboeck, Minahan, Harding & Harland, Milwaukee, Wis., for respondent.

Before DUFFY, KNOCH and KILEY, Circuit Judges.

DUFFY, Circuit Judge.

This case is here upon petition of the National Labor Relations Board (Board) seeking enforcement of its order dated December 13, 1961, against respondent A. R. Gieringer Tool Corp. The Board's decision and order and a supplemental decision issued July 18, 1962, are reported at 134 N.L.R.B. No. 124 and 137 N.L.R.B. No. 152, respectively.

Respondent is located at Milwaukee, Wisconsin. It manufactures, sells and distributes dies, jigs and fixtures. It is a comparatively small operation. From the period August 7, 1960 to May 7, 1961, the number of employees fluctuated from a high of nineteen to a low of eleven.

This case involves two separate proceedings brought by the Board. The first was tried on December 6, 1960 which was subsequent in time to the subject matter of both complaints. The evidence offered by the Board in the two proceedings was substantially the same. The witnesses were almost identical. In the second case, the General Counsel contended that employees David Fletcher, Gary Hetzer and Irving Groves were discharged for union activities. All three had testified at the first hearing. However, the discharges of Fletcher, Hetzer and Groves were not an issue in the first hearing.

The trial examiner, in the first case, found unfair labor practices and recommended an order directing the respondent to cease and desist. He found, however, there had been no discriminatory discharge as to employee Ballsieper, and recommended dismissal of the Section 8 (a) (3) charges. Respondent gave the Board a notice of its willingness to comply.

The second case was heard by a different trial examiner. He also found there were no discriminatory discharges and recommended a dismissal of the complaint.

The Board did not follow the findings and recommendations of the trial examiners. It found that employees Fletcher, Hetzer and Groves were discharged on account of union activities and, therefore, respondent violated Section 8(a) (3) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (3) and (1).

### DAVID FLETCHER.

We consider first the discharge of David Fletcher. He was one of five apprentices. He was second in seniority but had the lowest rating of the five as to skill and workmanship. Until about six months before his discharge, he had been a satisfactory employee. Thereafter, his attitude changed. He objected to doing machine work and created a disturbance in the shop in urging other apprentices not to do machine work. He would not take advice from journeymen machine workers who were there to instruct him.

On an occasion about four weeks prior to his discharge, he called an experienced tool maker employee a vile name and threatened him with physical violence. He showed a marked indifference to his work and to mistakes which were called to his attention.

After Fletcher's discharge, respondent commenced a formal proceeding before the Wisconsin Industrial Commission to cancel Fletcher's apprenticeship indenture. A full hearing was had before the entire Industrial Commission. Fletcher was represented by the union's attorney.

The Wisconsin Industrial Commission made findings which, although not binding on us, are persuasive of the validity of the findings of the trial examiner herein. A few extracts from the findings of the Wisconsin Industrial Commission are: "That on October 6, 1960, the apprentice, David Fletcher, was dismissed because there was insufficient work and because of dissatisfaction with his work. * * * That from a period commencing in the month of April, 1960, up to the time of his dismissal the apprentice, David Fletcher, had not evidenced the degree of diligence and faithful performances of his work as could rightfully be expected of an apprentice. * * * That David Fletcher objected to doing machine work because he believed that he had done sufficient machine work under his indenture. * * * That on several occasions the apprentice had made errors in doing his work but his attitude when these errors were called to his attention was one of 'So what if I made an error'. * * * It appears that his conduct instead of improving as these different matters were called to his attention tended to deteriorate. * * * "

We think the trial examiner herein was entirely warranted in finding " * * * [A]nd long before union organization began, Fletcher began displaying an attitude of indifference towards his work, reported for work late, and declined to work overtime when requested. * * * "

The trial examiner obviously believed the testimony of Donald Mohr, Production Manager, who testified that Fletcher's layoff was due in part to economic reasons, but that it was his "insolence to supervision" that was the "straw that broke the camel's back."

We can find no justification or support in this record for the Board's finding that Fletcher was discharged because of his union membership and activities.

## GARY HETZER.

In November 1960, respondent reached its lowest rate of production. Out of a total work force of sixteen, there were four apprentices. It was necessary to reduce the work force, so respondent decided to reduce the number of apprentices to two. The company consulted with the Wisconsin Industrial Commission on how to make the selection, as the Industrial Commission has broad power pertaining to the handling of apprentices. The Commission advised laying off the two apprentices with the least seniority. This advice was followed. Hetzer and Riemer were laid off.

No charge was made by the Board as to Riemer's layoff although he was far more active in union affairs than Hetzer, as was noted by the trial examiner.

In his intermediate report, the trial examiner found "Due to the falling off of business in the fall of 1960, which an industry chart in evidence shows was consistent with the national trend, management decided to lay off two more apprentices. * * * " This finding is abundantly supported by the record herein.

We think it is of some significance that at the time of the second hearing in May 1961, which was more than six months after the layoffs occurred, no new apprentices had been hired to replace Hetzer and Fletcher.

The Board contends that the only employees laid off at this time were those who had been active for the union. In addition to Hetzer and Riemer, employees Blumreiter and Huss were also laid off. As far as this record shows, neither of them had any connection with the union.

We agree with the finding of the trial examiner who found that Hetzer was not discriminatorily discharged. There is no

justification in this record for a contrary finding.

## IRVING GROVES.

Although four employees had been laid off during the first week in November 1960, respondent found it necessary to still further reduce its work force. It again had seniority in mind when it laid off Groves who, with one exception, had the least seniority. Several weeks before, Groves had told the plant manager that he planned to leave soon to establish his own machine shop.

The following is quoted from Groves' testimony: "The occasion of my leaving was that Donald Mohr, Plant Manager, told me that we were running low on work and he was going to have to lay somebody off. He said he was going to lay me off since I had expressed earlier that I might possibly leave in March, 1961. I had told him that I might leave in March, 1961. That was about two weeks before my layoff. * * * He said that he considered making me a foreman under Chet Hansen, foreman of the die makers. It was then that I told him that I possibly would go into my own business in March of the following spring, so that he wouldn't make plans."

Groves also testified: "I have been employed at Gieringer Tool Corporation as a tool and die maker since March, 1960. I left there about November 11 or 12, 1960. The occasion of my leaving was that I was laid off. * * * There was never anything said to me by Mohr or Hansen which led me to think that I would lose my job if I joined the union. I don't recall either of these men saying anything to me to lead me to think that I would be penalized if I joined the union. * * *"

The Board argues that Groves, a journeyman tool and die maker, was also a jig-borer, and that Groves was working on an assignment which needed two weeks more to complete. The Board also points out that only two weeks after Groves had been hired, he was earning $3 an hour, respondent's top wage, and that respondent thought well of his work.

Plant Manager Mohr testified: " * * Groves was laid off the week ending November 13, 1960. We had started laying off the lesser skilled people. Work continued to go down and we found we were getting out of balance. We got eventually to the point where we had nothing but highly priced people."

During the most recent two-year period, respondent has hired at least eight employees who were known to be union members. Hansen, who was a working foreman, was a union member. Several of the most active union adherents continued to work for the respondent.

We agree with the trial examiner that the layoff of Groves was not caused by his union sentiments and activities.

 Respondent urges the Board cannot relitigate the same facts in two separate cases, and that the rules of *res judicata* should apply as far as the second proceeding herein is concerned. We do not agree.

The charge giving rise to the first proceeding was filed September 29, 1960 and alleged that employee Ballsieper had been unlawfully discharged. Although Fletcher, Hetzer and Groves testified in the first proceeding, the unfair labor practice charge concerning their discharge was not filed until February 21, 1961. The second complaint was issued March 28, 1961, which was twenty days after the date of the first intermediate report. The second hearing was confined to litigating the issues which were thus raised.

We hold respondent was not prejudiced in any manner because of the two proceedings, nor was it denied the traditional safeguards of due process.

 We sustain the order of the Board insofar as it is based upon the Board's finding that respondent violated Section 8(a) (1) of the Act. It is apparent that Mohr, then a young man twenty-six years of age, was naive as to labor relations. He did, on at least one occasion, station himself in an automobile outside the union hall and observe what employees attended the meeting. He did make statements that he was against the

union in the plant and respondent must assume the responsibility for his utterances. However, it is clear that such feeling on the part of Mohr was not the cause of the layoffs of Fletcher, Hetzer and Groves.

That part of the order based upon the violation of Section 8(a) (1) of the Act will be enforced. That part of the order based upon the finding that employees David Fletcher, Gary Hetzer and Irving Groves were discriminatorily discharged because of union activities and sympathies, will not be enforced.