The **NATIONAL CASH REGISTER COMPANY**, Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD**, Respondent.

**NATIONAL LABOR RELATIONS BOARD**, Petitioner,

v.

The **NATIONAL CASH REGISTER COMPANY**, Respondent.

No. 26175.

United States Court of Appeals
Fifth Circuit.
Aug. 20, 1969.

---

Charles Kelso, Atlanta, Ga., Fisher & Phillips, Atlanta, Ga., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Walter C. Phillips, Director, 10th Region, National Labor Relations Board,

Atlanta, Ga., Allison W. Brown, Jr., National Labor Relations Board, Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Leonard M. Wagman, Allen H. Sachsel, Attys., N.L.R.B., for respondent.

Before WISDOM and CARSWELL, Circuit Judges, and ROBERTS, District Judge.

CARSWELL, Circuit Judge:

This case comes before the Court on petition to review and set aside a final order of the National Labor Relations Board, pursuant to § 10(f) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. The National Labor Relations Board has cross filed an application for enforcement of its order pursuant to § 10(e) of the Act, 29 U.S.C. § 160(e). The petition to review and set aside will be granted; the petition to enforce will be denied.

The Board found that the Company violated § 8(a) (5) and (1) of the Act by refusing to bargain with the Union after the Union had won a consent election. The Company filed timely objections to the election which had resulted in 22 votes for the Union and 21 votes for the Company with one void ballot. The objections were based upon a leaflet distributed by the Union on the day of the election. The Company requested a hearing which was denied. Whereupon the Regional Director filed a Report on Objections in which he recommended that the Board certify the Union. The Board accepted the recommendation of the Regional Director and certified the Union. The Company refused to bargain upon request and was found in violation of § 8(a) (5) and (1) of the Act.

The Union leaflet, which forms the basis of the dispute, was distributed to the Company's Birmingham branch employees by the Federation of Business Machine Technicians and Engineers Association on the day of the election. The Company objects to three statements and assertions contained in the leaflet.

First, the Company objects, as false and misleading, to the inclusion of a portion only of a collective bargaining clause in a contract between the Company's New York employees and the Union concerning involuntary transfers. The quoted portion states:

"Section 2.3—Transfers to Another Shift—Transfers from one shift to another shall be voluntary and where more more than one employee seeks to transfer to a vacancy on another shift, the employee with the highest seniority shall fill the vacancy. * * *"

The leaflet omitted the final paragraph which allowed the Company to assign shifts on an involuntary basis if no volunteers applied. The leaflet went on to say:

"VOLUNTARY * * * This section is needed very badly in Birmingham and will eventually be needed in suboffices. * * * Yet we know that there are men in this office who have worked night shift ⅓ of the time, involuntarily."

In the Report on Objections the regional director interpreted this portion of the leaflet as stating a "goal" of the petitioner "and does not so misrepresent the policies of the Employer as to become objectionable." [1]

The Company also objected to the statement that "for years" and at least on December 29, 1964, Union members received holiday pay equal to 2½ times

1. The Regional Director stated in his Report: "While admitting that the paragraph quoted in the leaflet is not a complete recital of Section 2.3, Petitioner, [Union], through counsel, contends that there was no misrepresentation of the provisions of the collective bargaining agreement. The undersigned agrees. Neither the quote, nor the following explanatory paragraph in the leaflet claims that there are no involuntary transfers under the contract. In the opinion of the undersigned the portion of the leaflet objected to states a goal of the Petitioner—voluntary transfers, and does not so misrepresent the policies of the Employer as to become objectionable."

normal while Birmingham employees received only double time. The Director in effect conceded the falsity of the statement but stated that because the contract mentioned in the leaflet was signed by the Company and Union on February 17, 1967 and made retroactive to November 1, 1966 and the Company sent a letter to *all* Technical employees advising them of a comprehensive "improvement package", effective that date, "the employees in Birmingham should not have been misled by the part of the leaflet pertaining to holiday pay and could evaluate the statement accordingly."

Finally the Company objected to the statement that "since 1967 [Union members] have been getting top pay in eight (8) years while it took us [Birmingham employees] 14 to reach the same scale." The Company offered evidence that union contracts covering New York employees prior to November 1, 1964, did not contain any set schedule for obtaining top pay and that increases beyond the fifth year were merit and not automatic increases. The Director found that the leaflet "did not state that top pay was reached by virtue of automatic increases since 1957 and the Employer does admit that increases beyond the fifth year were handled on merit basis and did not preclude the possibility of union people reaching top pay in eight years as stated in the leaflet." [2]

### I.

The Company contends that in the event that this Court refuses to evaluate the facts in the record and set aside the Board's Order to Bargain it is entitled, on remand, to a full hearing which has heretofore been denied by the Board.

■ It is well settled that in order to be entitled to a hearing a party must supply the Board with "specific evidence" which would constitute a prima facia case of election irregularities. N.L.R.B. v. O. K. Van Storage, Inc., 297 F.2d 74, 75 (5th Cir. 1961); N.L.R.B. v. Air Control Products of St. Petersburg, Inc. 335 F.2d 245, 250 (5th Cir. 1964). If, however, a prima facia case is submitted in which there are no "substantial and material factual issues" to be determined, N.L.R.B. v. Smith Industries, 403 F.2d 889, 892 (5th Cir. 1968), or which merely "question the ultimate interpretation placed by the Director upon certain conduct." N.L.R.B. v. Simplot Co., 322 F.2d 170, 172 (9th Cir. 1963) a hearing is not required.

■ In the instant case it is clear that the Union leaflet and the objections raised by the Company, along with supporting documents and affidavits filed with the Director, afforded a sufficient record upon which the Regional Director could make findings of fact and conclusions of law. The Company has not alleged, nor has the record revealed, the existence of any material facts or issues which would require a hearing or which could not be adequately presented in writing. The present case simply involves the interpretation of the effect of the Union leaflet on the exercise of a free choice by the voters in light of Company practices, agreements and contracts established on the records.

Under the circumstances of this case it was not an abuse of discretion for the Board to deny a hearing which "would serve only to permit argument," N.L.R.B. v. Simplot Co., supra. Likewise, this Court, under the circumstances, is not compelled to remand this case having found the record sufficient at this point for final determination.

---

2. The Regional Director further noted that: "Records submitted by the Employer, in fact show that some, though not a majority, of employees covered by the collective bargaining contracts reached top pay in eight years. Again, the undersigned does not find this portion of the Petitioner's leaflet to be such misrepresentation of the facts as to require that the election be set aside because of the lack of opportunity afforded the Employer to answer the statement."

## II.

■ In the supervision and conduct of elections the Board is given a wide but not absolute discretion. The primary function of this Court in reviewing labor elections is a determination of whether the Board has exercised a "reasonable" discretion in light of the circumstances of the individual case. See Pepperell Manufacturing Co. v. N. L.R.B., 403 F.2d 520, 522 (5th Cir. 1968).

The Board's evaluation of campaign propaganda is to be sustained if supported by substantial evidence on the record as a whole.[3] Universal Camera Corporation v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1952).

In N.L.R.B. v. Houston Chronicle Publishing Co., 300 F.2d 273, 277 (5th Cir. 1962), this Court adopted certain factual tests, "useful in ascertaining whether the legal standards have been transgressed," which the Board itself has promulgated:[4]

"As a guide to determining whether employees could evaluate propaganda, the Board frequently considers (1) whether the promulgating party had special knowledge of the facts asserted, thus making it more likely that the employees would rely on them, and (2) whether the challenging party had the opportunity to or did rebut the false assertions." N.L.R.B. v. Houston Chronicle, supra, at 278.

Nearly all the elements of the present case were presented to this Court before in *Houston Chronicle*, supra. In the present case the Union's "superior position of knowledge", N.L.R.B. v. Houston Chronicle, 300 F.2d at 279, with respect to Union contracts covering New York members cannot be denied. It is further evident that the Company had no adequate opportunity to rebut the assertions contained in the leaflet which was distributed on the day of the election.

■ The Regional Director's "finding" that the portion of the leaflet relating to involuntary transfers stated only a "goal" of the Union cannot be supported by a reading of the leaflet as a whole. The impression created and undoubtedly intended by the omission of the final paragraph of Section 2.3 of the New York Contract, was that *no* Union employees in other cities were involuntarily assigned. The omission of this paragraph with the emphasis on the word "voluntary" constitutes a "half truth" and as stated in *Houston Chronicle*, supra, "[t]he form of presentation employed by the Union is in and of itself misleading, in addition to the effect of substantive inaccuracies which it may embody." 300 F.2d at 279.

■ In regard to the holiday pay scale dispute the Regional Director's finding that the employees could evaluate the falsity of the claim, based upon a letter sent out by the company 6 months earlier, defies reality. Again a distinct parallel can be drawn between the present case and that of the *Houston Chronicle*, supra, where this Court specifically rejected the Board's position that editorial employees are especially qualified by intelligence or experience "to enable them to evaluate with more perspicuity than any other class of employees the truth or falsity of campaign propaganda * * *," even with the benefit of the Chronicle's last minute telegram attempting to dispel the inaccuracies of the Union representations. The Court then went on to emphasize that,

"[p]urportedly authoritative and truthful assertions concerning wages and pensions of the character of those made in this case are not mere prattle; they are the stuff of life for Unions and members, the selfsame subjects concerning which men organize and elect their representatives to bargain." 300 F.2d at 280.

Even assuming they had the Company letter in mind while reading the Union

---

3. This criteria of review is prescribed in 29 U.S.C. § 160(e).

4. Celanese Corporation of America, 121 N.L.R.B. No. 42, 42 LRRM 1354 (1958).

leaflet, the leaflet claimed that Union employees had been receiving this rate since 1957 which is totally untrue.

In respect to periodic pay increases the Regional Director's finding that the Company's merit plan did not "preclude the possibility of Union people reaching top pay in eight years" is immaterial in light of the fact that the leaflet, fairly read, states that "they [*Union employees as a whole*] have been getting top pay in eight (8) years. * * *" Again we are confronted with a statement which is totally misleading in form as well as substance.

The petition to review and set aside the order of the National Labor Relations Board is granted and cross application for enforcement is denied.