NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

STANDARD FORGE AND AXLE COM-
PANY, Inc., Respondent.

No. 27161

Summary Calendar.

United States Court of Appeals
Fifth Circuit.

Oct. 22, 1969.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., John F. LeBus, Director, N. L. R. B., New Orleans, La., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Nancy M. Sherman, Seth D. Rosen, Attys., N. L. R. B., for petitioner.

John C. Bacheller, Jr., C. Lash Harrison, William W. Alexander, Jr., Atty., Fisher & Phillips, Atlanta, Ga., for respondent.

Before THORNBERRY, MORGAN and CARSWELL, Circuit Judges.

CARSWELL, Circuit Judge:

■ Pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 409 F.2d 804, Part I (5th Cir. 1969).

This is an Application for Enforcement of a Board Order directing the respondent Company to cease and desist, to post appropriate notices and to offer discharged employees reinstatement. We enforce.

The Board found that the Company violated Section 8(a) (1) of the Act by interrogating employees concerning their Union activities and voting intentions, by threatening its employees with loss of work opportunities and privileges in reprisal for Union activities, by suggesting to its employees that they could obtain satisfaction of their grievances by abandoning the Union and dealing directly with the Company, and by keeping a Union meeting under surveillance. The Board further found that the Company violated Section 8(a) (3) and (1) of the Act by discharging employees William E. Cannon, Clarence R. Litaker and Roy A. Marston because of their Union activities.

■■ It is well settled that the findings and conclusions of the Board, when supported by the record as a whole, will not be disturbed on appeal. 29 U.S.C. § 160(e). The primary function of this Court in reviewing Board decisions is a determination of whether the Board has exercised a "reasonable" discretion in light of the circumstances of the individual case. See Pepperell Manufacturing Co. v. N. L. R. B., 403 F.2d 520, 522 (5th Cir. 1968).

■■ The record herein reveals that Company supervisors interrogated numerous employees concerning their Union activities and sentiments, specifically asking whether they favored the Union, planned to vote for it, signed Union authorization cards or attended Union meetings. These inquiries are the type of "pointed questions" found coercive in N. L. R. B. v. Camco, Inc., 340 F.2d 803, 804–807 (5th Cir. 1965), cert. denied, 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 1339. These interrogations were frequently accompanied by thinly veiled inducements or threats: thus, one foreman after his questioning had revealed that one Gillespie had signed a Union card, told him that a Superintendent had said "they would close down before they would operate under a union." Such threats and inducements plainly violated Section 8(a) (1) of the Act. N. L. R. B. v. Coats & Clark, Inc., 231 F.2d 567, 569–570 (5th Cir. 1956); N. L. R. B. v. Camco, Inc., supra. As to the Company's contention that the Examiner and Board should have believed its supervi-

sors' denials that these statements were made, it is well settled that credibility resolutions are peculiarly within the province of the Trial Examiner and the Board and entitled to affirmance unless inherently unreasonable or self-contradictory. N. L. R. B. v. Finesilver Mfg. Co., 400 F.2d 644, 645 (5th Cir. 1968).

■ It is equally well settled that surveillance of a Union meeting by a company supervisor constitutes a violation of Section 8(a) (1) of the Act. N. L. R. B. v. Bonham Cotton Mills, Inc., 289 F.2d 903 (5th Cir. 1961); N. L. R. B. v. Dan River Mills, Inc., 274 F.2d 381 (5th Cir. 1960); N. L. R. B. v. Comfort, Inc., 365 F.2d 867 (8th Cir. 1966); N. L. R. B. v. A. R. Gieringer Tool Corp., 314 F.2d 359 (7th Cir. 1963). See generally, Hendrix Mfg. Company v. N. L. R. B., 321 F.2d 100 (5th Cir. 1963). It is uncontroverted that Frazier Paul, a company supervisor, and Clarence Jenkins, a company employee actively opposed to the Union, sat in an automobile parked near the Union Hall for at least 30 minutes while a meeting of company employees was in progress. Both men credibly testified that they came to Prattville on a personal errand —to collect a debt from Richard Bond, an employee working that day at Prattville Press, located near the Union Hall. However, this testimony leaves wholly unexplained the reason why, after Jenkins knocked at the newspaper's door and heard noises, Jenkins and Paul made no immediate attempt to attract the attention of anyone working at the office but, rather, were content to remain in the car for approximately 45 minutes before making any additional effort to see Bond.

Under these circumstances it was not unreasonable for the Board to find that Paul and Jenkins knew there was a Union meeting in progress and that they "lingered there in order to keep the meeting under surveillance and thus violated Section 8(a) (1) of the Act." See N. L. R. B. v. Bonham Cotton Mills, Inc., supra.

■ In a pre-election letter the Company asserted that 70 percent of its business came from customers who purchased *all* their axles from Standard Forge and that *many* of these customers had informed the Company that, if the plant became unionized, Standard Forge would no longer be their sole source of supply "because of the ever present possibility of a work stoppage due to strikes or walkouts." However, in his testimony at the hearing after the Union had lost the election, the Sales Manager conceded that these customers did not purchase from the Company exclusively but sometimes purchased from competition. He also conceded that only three customers stated that they would purchase from competitors if the Union won. Thus the letter based assertion of job insecurity on conscious overstatements, half truths, and overt misrepresentations. Such pre-election propaganda, to which the Union could not properly respond due to lack of adequate knowledge of the correct facts, violates the principles announced in N. L. R. B. v. Houston Chronicle Publishing Co., 300 F.2d 273, 277 (5th Cir. 1962) and National Cash Register Company v. N. L. R. B., 415 F.2d 1012 [5th Cir., slip opinion dated August 20, 1969], and tends to "impede and coerce" employees and therefore constitutes an unfair labor practice. N. L. R. B. v. Nabors, 196 F. 2d 272, 276 (5th Cir. 1952), cert. denied, 344 U.S. 865, 97 L.Ed. 671.

■ In regard to the issue of the discharge of the three employees, this Court has held that the initial choice between two equally conflicting inferences of discriminatory or non-discriminatory employer motivation is primarily the province of the Board. This Court will not displace the Board's choice, if reasonable, between two fairly conflicting views even though this Court would have justifiably made a different choice at a *de novo* hearing. N. L. R. B. v. Coats & Clark, Inc., supra, 231 F.2d at 572; N. L. R. B. v. Transport Clearings, Inc., 311 F.2d 519, 523 (5th Cir. 1962).

Without reiterating the total background of each individual case, we find the Board's findings and conclusions to be reasonable, based upon the following facts.

Each of the discharged employees, Cannon, Litaker and Marston, were Union adherents and active Union supporters. Cannon and Litaker were, indeed, Union organizers. All three had excellent work records and had experienced no trouble prior to the Union organization drive. Each of these employees came under close "surveillance" by the Company as the Union drive gained strength.

Employee Cannon's job required the drilling of brake shoes. In theory his foreman was to bring him materials for his job. In practice, however, Cannon often went to obtain materials himself, and prior to his Union activity was never questioned about this. However, after the Union drive began, Company supervisors accused Cannon of going to the brake shed to discuss Union activity and questioned him about his Union activity. Four days before his discharge, Cannon was working his drill when it broke at the handle. He angrily tried to hammer it back in place. The machine was repaired and nothing was said about the incident. There was evidence that the machine had been broken before and that the bolt was weak. Cannon was fired for "laying off" the job and destruction of Company property.

Employee Litaker was discharged after he reported sick one day but intended to work. By 11:40 he felt worse and sought his foreman to tell him he was going home. Unable to locate him he informed the timekeeper and left. Litaker was discharged for leaving the plant without his foreman's permission.

Marston was discharged for leaving his work area to go to "Artic Storage" for cigarettes without checking out. Marston's supervisor, Whitmire, testified that he knows of this practice by employees but never enforced the check-out rule.

All employees sought reinstatement but were refused. Evidence was introduced that discharges were rare and employees were almost always reinstated after a few days.

The Board's finding that the motivating cause of discharge was the Union activity of the three employees, under the above conditions, was not unreasonable even though there might have been a technically proper ground for discharge. N. L. R. B. v. Hudson Pulp and Paper Corporation, 273 F.2d 660, 666 (5th Cir. 1960).

The Company contends that the Board denied it due process of law in that the Company has been denied effective assistance of counsel, has been denied the right to prepare for trial, present evidence and cross-examine witnesses all because of alleged interference with the Company's right to interview witnesses prior to trial.

Company counsel received a report that counsel for General Counsel McGrath had told employees that it was an unfair labor practice for the Company to interview them prior to trial. On the first day of the hearing the Company moved for a continuance so that the Trial Examiner or Regional Director could conduct an investigation of the charge. The counsel for General Counsel denied the charge and the Trial Examiner denied the motion after questioning the counsel for the General Counsel. The Trial Examiner granted the Company the right to renew the motion at the close of the General Counsel's case. The Company failed to renew the motion. Three days prior to this the Examiner had advised the Company to apply for a continuance with the Regional Director. This advice was not followed. Failure to do this led to the assembling of all the witnesses, parties and counsel from Washington, D. C., Florida, Louisiana, Alabama (Birmingham and Fairfield), to Montgomery, Alabama for the hearing. Under these circumstances we do not believe that the denial of a continuance was an abuse of discretion by

the Examiner. See N. L. R. B. v. American Potash & Chemical Corporation, 98 F.2d 488, 492 (9th Cir. 1938). A review of the record does not reveal that the action hindered the cross-examination or preparation of Company counsel to any significant extent.

The order of the Board is due to be and hereby is enforced in all respects and particulars.