**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SOUTHERN FOODS, INC., Respondent.**

No. 28892.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1970.

Walter C. Phillips, Director, Region 10, N. L. R. B., Atlanta, Ga., Baruch A. Fellner, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, John I. Taylor, Nan C. Bases, Attys., N. L. R. B., for petitioner.

Lee H. Henkel, Jr., James H. Blanchard, Swift, Pease, Davidson & Chapman, Columbus, Ga., for respondent.

Before JOHN R. BROWN, Chief Judge, and DYER and INGRAHAM, Circuit Judges.

DYER, Circuit Judge:

Having concluded that Southern Foods, Inc. violated the National Labor Relations Act § 8(a) (1), (5)[1] by refusing to bargain with the Union[2] which had been certified as the exclusive bargaining agent of its employees, the National Labor Relations Board ordered the Company to cease and desist from the unfair labor practices, to bargain with the Union upon request, and to post appropriate notices.[3] Because we find that the Board improperly certified the Union, enforcement of the order is denied.

During the struggle between the Company and the Union, two certification elections have already been held. The first resulted in a victory for the Union but was ultimately set aside, and another election was held.

After the second election, in which the Union again prevailed, the Company filed timely objections, claiming that the Union had transgressed the bounds of legitimate campaign propaganda. The objection most pertinent to, and dispositive of, our inquiry is Objection No. 4, which reads:

The Union exceeded the bounds of legitimate campaign propaganda by mailing to the employees of Employer a letter dated November 13, 1967, which arrived at the homes of most employees during the day of November 14, 1967, and which was first seen by Employer on the morning of the election, November 15, 1967. Such letter deliberately deceived the employees by stating that "Armour & Company has already offered more in negotiations than Swift and Southern Foods Company pays in wages and benefits here in Columbus, Georgia," when such is completely false and misleading in that wages and total benefits at Southern Foods, Inc. are greater than the wages and benefits offered at Armour & Company. Such letter was mailed to the employees at such a time that Employer had no adequate opportunity to answer such false statement. This misrepresentation inhibited the exercise of free choice of the employees of Employer and rendered the casting of an uncoerced ballot impossible.

After investigation the Regional Director decided that the misrepresentation complained of had sufficient possibility of impact to warrant setting aside the election; he directed that a third election be held.

The Union filed a request for reconsideration of the Regional Director's order. Thereafter, the Regional Director granted the Union's motion and vacated his order directing a third election.

Subsequently the Board found that Objection No. 4 did not afford, in the

---

1. 29 U.S.C.A. § 158(a) (1), (5).

2. Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO. On February 28, 1969, the Board granted the Union's unopposed motion to amend the Decision and Order to reflect the Union's change of name from United Packinghouse, Food and Allied Workers, AFL–CIO.

3. The Board's Decision and Order are reported at 174 N.L.R.B. No. 29.

context of the whole campaign, a substantial basis for assuming that employee free choice had been impaired. The Board certified the Union as the exclusive collective bargaining representative for all employees in the unit.

When the Union requested recognition on the basis of its Board certification, the Company refused. Thereupon, a Section 8(a) (5) charge was filed and a complaint issued. In its answer the Company, alleging that the Union's certification was invalid, admitted its refusal to bargain but denied any violation of the Act. On the General Counsel's motion for summary judgment, the Trial Examiner determined that he was bound by the Board's findings in the representation proceedings and that no litigable issue was before him. Summary judgment was granted, and the Board approved and adopted this decision.

This Court has already delineated the permissible scope of its review in, and fashioned guidelines for, cases of this genre. NLRB v. Golden Age Beverage Co., 5 Cir. 1969, 415 F.2d 26, 29–30, and Home Town Foods, Inc. v. NLRB, 5 Cir. 1969, 416 F.2d 392, 394–396, 400, provide detailed descriptions of our role. We need not retread this well-worn trail. We may proceed immediately to the focal point of this controversy: whether the Union's eleventh hour pre-election letter contained false or misleading statements which contaminated the laboratory conditions and rendered the certification election invalid. In substance, this is the issue raised by Southern Foods' Objection No. 4.

To an otherwise unobjectionable letter received by Company employees on the eve of the election, the Union added this postscript:

> Armour & Company has already offered more in negotiations than Swift and Southern Foods Company pays in wages and benefits here in Columbus, Ga. The Armour workers committee and members are still holding out for more—*and they'll get it!*

According to the Union, this postscript was in response to a speech delivered two days before the election by a Company representative. But the Company speech did not mention wages or benefits. Rather, it generally questioned the diligence and efficacy of Union representation. However, the Union postscript, the alleged reply to the charges made in this speech, specifically alluded to wages and benefits. Armour, it claimed, had already offered more than Swift and Southern Foods. The necessary inference is that Union bargaining produced such an offer.

To substantiate Objection No. 4, the Company submitted the testimony of an official at Armour's Columbus plant, and a comparison between the wage and benefit scales at the Armour and Southern Foods plants in Columbus. The Armour official testified that the wage rates and fringe benefits in effect at Swift & Company exceeded those at Armour & Company when the Union postscript was written. Moreover, he stated that no increases in wages and fringe benefits at Armour had really been offered to the Union. He did say that, in casual conversations with the Union, he had offered to consider an additional holiday or a ten cents per hour increase in wages and benefits, if the Union would accept the balance of Armour's proposed contract.

Using fringe benefit estimates provided by the Armour official, Southern Foods prepared a comparison between the wage/fringe benefit scales at the two plants. The comparison shows that wages and wages plus fringe benefits are substantially higher at Southern Foods than at the Armour plant. Even adding ten cents per hour to the Armour total, the dichotomy remains obvious.

Apparently the Board accepted these factual allegations as true, yet it held that no new election was necessary. In the Board's opinion, "in view of the volume and nature of permissible propaganda utilized by both sides in this campaign, including a charge by the Employer that the [Union] had earlier misrepresented facts to employees, coupled

with a warning to employees not to credit 'sweet talk and big promises,' we are satisfied that the employees could reasonably regard the short, conclusionary, and undocumented assertion in the postscript to the 2-page letter to be in the nature of a self-serving, puffing statement—if, indeed, any puffing was in fact present."

■ We do not share the Board's satisfaction. Apparently "puffing" is a new term in the Board's lexicon; its usage has been more common in used car lots than in Board-supervised elections. Relying on the Board's previous pronouncements, this Court has devised a clearer, more certain test for evaluating questionable campaign communications: (1) whether there has been misrepresentation of a material fact; (2) whether the misrepresentation came from a party who was in an authoritative position to know the truth or who had special knowledge of the facts; (3) whether the other party in the election had adequate opportunity to reply and to correct the misrepresentation. Pepperell Mfg. Co. v. NLRB, 5 Cir. 1968, 403 F.2d 520, 523; see NLRB v. Bill's Institutional Commissary Corp., 5 Cir. 1969, 418 F.2d 405, 407; National Cash Register Co. v. NLRB, 5 Cir. 1969, 415 F.2d 1012, 1016. Recently this court added a fourth element to the test: whether the employees had independent knowledge of the misrepresented fact, so that they could effectively evaluate the propaganda. S. H. Kress & Co. v. NLRB, 5 Cir. 1970, 430 F.2d 1234. Here all elements of the test were present. First, there was a material misrepresentation. Purportedly authoritative and truthful assertions concerning wages and pensions of the type made in this case are *"not mere prattle"*—or puffery; "they are the stuff of life for Unions and members, the selfsame subjects concerning which men organize and elect their representatives to bargain." National Cash Register Co. v. NLRB, *supra*, 415 F.2d at 1016, quoting NLRB v. Houston Chronicle Publishing Co., 5 Cir. 1962, 300 F.2d 273, 280. Moreover, as noted previously, the disparity between the Union's claims and accepted facts conclusively establishes a misrepresentation. *See* NLRB v. Bill's Institutional Commissary Corp., *supra*, 418 F.2d at 407. Second, Union representatives were certainly in an authoritative position to know the status of their negotiations with Armour. Third, the Company had no opportunity to reply and to correct the misrepresentations since employees did not receive the Union's letter until the day before the election. Finally, employees who received the letter ostensibly had no independent knowledge of negotiations at the Armour plant; thus, they could not effectively evaluate the Union propaganda.

■ In the factual context of this case, we hold that the Union misrepresentation—headlined by use of a postscript set apart from the body of the letter and manifest to everyone who received the letter—interfered with and precluded a free choice of bargaining representatives. *See* Pepperell Mfg. Co. v. NLRB, *supra*, 403 F.2d at 523. The Union ensured that the Company would have no opportunity to counter the falsities contained in the postscript, and the employees could not have been expected to divine the truth for themselves. S. H. Kress & Co. v. NLRB, *supra*; *see* National Cash Register Co. v. NLRB, *supra*, 415 F.2d at 1016–1017.

Consequently we conclude that enforcement of the Board's order certifying the Union as the employees' bargaining representative should be denied.[4]

Enforcement denied.

4. Our disposition of the case makes it unnecessary for us to reach the other objections raised by the Company.