**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PRODUCERS COOPERATIVE ASSO-CIATION, Respondent.**

**No. 456–70.**

United States Court of Appeals, Tenth Circuit.

April 6, 1972.

Rehearing Denied May 10, 1972.

---

Nancy M. Sherman, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel., N. L. R. B., with her on the brief), for petitioner.

William G. Haynes, of Eidson, Lewis, Porter & Haynes, Topeka, Kan., for respondent.

Before SETH and HOLLOWAY, Circuit Judges, and KERR, District Judge.

SETH, Circuit Judge.*

This case is before us on the application of the National Labor Relations Board for enforcement of an order issued against the Producers Cooperative Association, a Kansas corporation engaged in the business of selling feed and related products.

On October 23, 1967, by a vote of fourteen to ten, Producers' production and maintenance employees elected to join the Laborers International Union of North America. This was on a stipulation for representation upon consent election. On October 25th, Producers filed objections to the election, alleging that the union had made misrepresentations to Producers' employees the evening before the election which affected its outcome. Specifically, Producers complained that union representatives had told its employees that it had successfully negotiated a contract calling for a thirty cent hourly raise for the employees of Farmers Cooperative Association, a similar business located in a nearby town, while in truth no such agreement had been reached with Farmers.

The Regional Director of the NLRB conducted an administrative investigation of the charge, and found Producers' complaint to be without merit. In his report the Regional Director concluded that Producers' employees had never been told that a contract had been signed in behalf of the employees of Farmers Cooperative. Apparently conflicting evidence was before the Director concerning the representations that were made to Producers' employees at their October 22nd meeting. From references in this report it would appear that some employees stated that they had been told by union representatives that the agreement in the Farmers Cooperative case had merely been submitted to that company for its consideration, while others claimed they were told that the company's negotiators had submitted it with a recommendation for acceptance. In

* (Reassigned to Seth, Circuit Judge, for opinion).

passing on this point the Regional Director concluded that:

"The issue as to whether the other company's negotiators agreed to recommend approval or whether they agreed to present the Union's proposal need not be resolved for either would be sufficient to show that the Petitioner [union] was having substantial success in its efforts to obtain the wage increases."

Statements were also made concerning the amount of the hourly increase being negotiated for Farmers Cooperative employees. Some statements were to the effect that the wage increase being discussed with Farmers Cooperative was twenty-nine cents per hour, while the union had represented to Producers' employees that the proposed increase for Farmers' employees was thirty cents per hour. We do not believe these differences need be here considered.

Producers filed exceptions to the Regional Director's report and requested a hearing which was denied. Attached to the exceptions were affidavits from employees who had been present at the October 22nd meeting, and who stated they had been told that the union had either signed or agreed to sign a contract with Farmers Cooperative calling for a thirty cent raise in hourly pay. Producers characterized this as new evidence, and presented an additional affidavit, executed jointly by the president of Farmers Cooperative and by the company's legal counsel, in which it was stated that at the time of the October 22nd meeting, no agreement had been reached between the union and Farmers Cooperative. It is clear that no wage increase had been then agreed to at Farmers.

Producers thus contended that the misrepresentations made at the October 22nd meeting materially affected the outcome of the October 23rd election, and requested that it be given a hearing on the matter. The NLRB subsequently issued its Decision and Certification of Representation, in which it concluded that Producers' exceptions raised no material issues of fact or credibility, adopted the Regional Director's findings, and certified the union. No hearing was held by the Director or by the Board.

At about the same time this decision was issued, the union filed a charge with the NLRB alleging that Producers had unlawfully refused to bargain in good faith (section 8(a) (5) and (1)). Producers admitted its refusal in its answer, but challenged the validity of the certification of the union. General Counsel for the Board filed a combined motion and brief for summary judgment. Producers filed a written response and requested a hearing on its objections to the election. The motion was referred to a trial examiner who granted General Counsel's motion, saying:

"Since the facts of record do not disclose that the Union had represented that any wage increase had been achieved at Farmers Cooperative Association, the terms of the contract thereafter executed do not appear to be material to any issue presented by the objections to the election. The Respondent's offer thus not constituting material evidence no hearing is required in that regard."

The Board then held that the summary proceeding was proper and that Producers had violated section 8(a) (5) and (1) of the Act by refusing to recognize and bargain with the union. Producers was ordered to cease and desist from the unfair labor practices found, or like related conduct; upon request, to bargain in good faith with the union; and to post the usual notices. The NLRB now seeks enforcement of this order pursuant to section 10(e) of the National Labor Relations Act, 29 U.S.C. §§ 151–188.

Respondent here opposes the application for enforcement on the grounds that the record discloses a material misrepresentation on the part of the union which renders the October 23rd election invalid. The election certification case is No. 17–RC–5501; the labor practice case is No. 17–CA–3560.

It is apparent that under these circumstances the record before us is limited. As indicated above there was no hearing held by the Regional Director in his ex parte investigation of the objections to the election. Thus we cannot tell upon what data he based his official decision. The issues were of course not heard by a trial examiner. By way of record in the election proceedings, No. 17–RC–5501, in addition to the election stipulation and tally, we have only the Respondent's objection, the Regional Director's Report, the Respondent's objection to the Report, and the Board's decision. In view of this it is difficult to follow the prescribed standards for review.

In his report, the Regional Director said:

"It is clear and undisputed that the Petitioner did not represent at the October 22 meeting of the Employer's employees that a contract had been signed embodying the wage increase. Indeed, the testimony shows that the employees were told that a contract had not been signed. The only dispute centers around whether the employees were told that the wage increase at the other company had been agreed upon or whether they were told that the company's negotiators were going to recommend approval. In view of the finding above that the Petitioner was at the time having substantial success in obtaining the increased wages, it is concluded that neither of these representations would warrant setting aside the election. The Board does not require complete accuracy in campaign propaganda and allows for a reasonable amount of puffing. The test is whether there has been substantial and material misrepresentations that would reasonably tend to interfere with the employees' free choice in an election. It is found that, under all the circumstances in this case noted above, no such misrepresentations were involved and at the most the Petitioner's assertions amounted to some puffing of a true fact."

In dealing with the dispute in this manner, the Regional Director held that no matter which of the two statements he considered was given to the employees, it could not have had a great enough impact to deprive them of free choice in the election. Consequently, he did not make a finding on the question of whether the management negotiator for Farmers actually did recommend that the wage increase proposal he had negotiated with the union be accepted. It is also doubtful whether the official of the Board considered the third position asserted which was that the employees were told that a thirty cent increase had been actually granted at Farmers.

The several affidavits by Producers' employees submitted by the Respondent with its exceptions on February 15, 1968, to the Regional Director's Report stated directly that the employees at the October 22nd meeting were told that the Farmers employees had "gotten a thirty cent an hour increase."

Thus we are confronted with the Board's final determination that the election was valid by its approval of the Director's report, and that a hearing was not warranted. Later in the Decision in the unfair labor practice proceeding, No. 17–CA–3560, the Board in a footnote said in part:

"We agree with the Trial Examiner that Respondent's objections to the election in Case 17–RC–5501 and its offer of proof in the present 8(a)(5) proceeding do not raise material issues which would warrant a hearing. However, in doing so, we rely solely upon the rationale of the Regional Director in overruling the Employer's objections in the underlying representation proceeding. Thus, the Regional Director in that proceeding found it unnecessary to determine whether the Union informed Respondent's employees that agreement on a wage increase for employees of Farmers Cooperative Association had been obtained, as Respondent contends, or whether, as the Union argues, Respondent's employees were merely told

that Farmers Cooperative had agreed to submit the Union's wage proposal to that Association's governing body. For the Regional Director concluded that, under either version, the Union's statement, considered with the substantial success it was then having in obtaining the wage increase, constituted puffing of a type insufficient to warrant setting aside the election. As we agree with the Regional Director, and since Respondent's offer of proof creates no material factual issue as to the validity of his reasoning, we adopt the Trial Examiner's finding that no hearing is warranted herein."

The Board thus decided that if the false statement was made to the employees of Respondent the evening before the election, that the employees of Farmers had received a thirty cent increase, it would have no effect as to the validity of the election. The Board thus considered the third position asserted.

A similar fact pattern was recently dealt with in the Fifth Circuit in N.L.R.B. v. Southern Foods, Inc., 434 F.2d 717 (5th Cir. 1970). In Southern Foods, the company challenged the Board's application for enforcement of an order on the ground that the union election had been invalid, due to material misrepresentations made by the union the day before the election. Specifically, the company alleged that the union had deliberately deceived its employees by falsely stating in a letter that "Armour & Company has already offered more in negotiations than Swift and Southern Foods Company pays in wages and benefits . . . ." As in the case at bar, the Regional Director ultimately decided that the misrepresentation complained of was not coercive in nature and he certified the union as the exclusive collective bargaining representative for all employees in the unit. The NLRB adopted the Regional Director's findings and adjudged Southern Foods to be in violation of section 8(a) (5) of the Act, and sought enforcement of its order in the Fifth Circuit Court.

In challenging the application for enforcement, Southern Foods submitted an affidavit in which an official at Armour and Company stated that no increases in wages and fringe benefits at Armour had been offered to the union. As in the instant case, this information had been available to the Regional Director, who dismissed it as permissible "puffing" on the part of the union.

The Circuit Court denied enforcement, saying:

"First, there was a material misrepresentation. Purportedly authoritative and truthful assertions concerning wages and pensions of the types made in this case are 'not mere prattle' —or puffery; 'they are the stuff of life for Unions and members, the selfsame subjects concerning which men organize and elect their representatives to bargain.' [Citations omitted]. Moreover, as noted previously, the disparity between the Union's claims and accepted facts conclusively establishes a misrepresentation. [Citations omitted]. Second, Union representatives were certainly in an authoritative position to know the status of their negotiations with Armour. Third, the Company had no opportunity to reply and to correct the misrepresentations since employees did not receive the Union's letter until the day before the election. Finally, employees who received the letter ostensibly had no independent knowledge of negotiations at the Armour plant; thus, they could not effectively evaluate the Union propaganda." 434 F.2d 717, 720.

See S. H. Kress & Co. v. N.L.R.B., 430 F.2d 1234 (5th Cir. 1970).

In Collins & Aikman Corp. v. N.L.R.B., 383 F.2d 722 (4th Cir. 1967), dealing with the same issue, the court said:

" . . . All wage earners in today's economy are indeed conscious of and affected by their rates of pay. Surely one of the strongest selling points of the Union is its ability to negotiate effectively more favorable working conditions, especially increased pay rates, in selling itself to a majority of the workers at a non-union plant . . . . "

We agree that a misrepresentation of this nature interferes with and precludes a free choice of bargaining representatives. It is not the sort of "trivial misstatement" we have alluded to in the past. N.L.R.B. v. Gold Spot Dairy, Inc., 432 F.2d 125 (10th Cir. 1970). When a party deliberately makes material misrepresentations of fact in circumstances in which employees are unable to evaluate the truth or falsity of the assertions, the Board itself has held that the legitimate bounds of campaign propaganda have been exceeded and has set aside the election. See Cleveland Trencher Co., 130 NLRB 600, No. 59, 47 LRRM 1371 (1961).

■ The authorities indicate that under the circumstances here present the Respondent is entitled to a hearing and to have a transcript of compliance proceedings brought before the reviewing court. N.L.R.B. v. Plant City Welding & Tank Co., 275 F.2d 859 (5th Cir. 1960). When the record is insufficient to determine the correctness of the Board's order, a remand is necessary and proper. N.L.R.B. v. Miller Trucking Service, Inc., 445 F.2d 927 (10th Cir. 1971); N.L.R.B. v. Royal Plating & Polishing Co., 350 F.2d 191 (3d Cir. 1965); N.L.R.B. v. United Furniture Workers of America, 337 F.2d 936 (2d Cir. 1964); N.L.R.B. v. Tex-Tan, Inc., 318 F.2d 472 (5th Cir. 1963). There was presented during the initial ex parte investigation by the Regional Director a substantial issue of fact as to the representations made by the union at the meeting. The statement as to wages was directed to a very important and basic factor bearing on the attractiveness and efficacy of this union as the employees' representative. The Respondent presented specific references and facts bearing on this issue. This was indeed an issue of importance to be evaluated by the Director. It was one which his recommendation indicates was the subject of conflicting views. It was an issue which for its proper resolution demanded a hearing. United States Rubber Co. v. N.L.R.B., 373 F.2d 602 (5th Cir. 1967). On this foundation

the Board also seeks to place its later summary judgment proceedings in the unfair practice case, and again to preclude a hearing. We here express no opinion on the summary judgment procedure under these circumstances as the basic defect was the failure to hold a hearing on the challenge to the election (17–RC–5501).

Thus a remand would be indicated here. National Cash Register Co. v. N.L.R.B., 415 F.2d 1012 (5th Cir. 1969); Excelsior Laundry v. N.L.R.B., 409 F.2d 70 (10th Cir. 1968); N.L.R.B. v. Ideal Laundry & Dry Cleaning Co, 330 F.2d 712 (10th Cir. 1964). However, there is an additional and unusual factor here present which leads us to deny enforcement instead.

■ As we have seen, the Board held that even if the false statement was made to the employees that the other group had received a thirty cent increase, this would be no more than "puffing." Also the affidavits referred to above state that the false statement was so made. The Board in its Brief states the rule:

"... Where the Board reasonably concludes that the competent evidence most favorable to the objecting party would not warrant setting aside the election, even if fully credited, it may properly overrule the objections without conducting an evidentiary hearing. See N.L.R.B. v. Sun Drug Co., 359 F.2d 408, 415–416 (C.A. 3, 1966); [N.L.R.B. v.] Golden Age Beverage [5 Cir.], supra, 415 F.2d [26] at 32–33. '[T]he rationale of the rule is a simple one:' if 'there is nothing to hear, then a hearing is a senseless and useless formality.' N.L.R.B. v. Air Control Products, 335 F.2d 245, 249 (C.A. 5, 1964)."

Thus when the Board applied this rule it must have considered again the contents of the affidavits, and again assuming the false statement to have been made, found it made no difference. With this we cannot agree; it was a material misrepresentation, and in view of the direct holding a remand would serve no

purpose. We must hold that the union misrepresentation the night before an election at a meeting of employees as to what the union seeking certification had just achieved by way of a substantial wage increase at a similar nearby plant must be held to invalidate the election. We agree with the reasoning and the result reached by the court in N.L.R.B. v. Southern Foods, Inc., 434 F.2d 717 (5th Cir. 1970).

Enforcement is denied.