BAUMRITTER CORPORATION et al.,
Petitioners,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 6916.

United States Court of Appeals
First Circuit.

Dec. 8, 1967.

Alan J. Levenson, Portland, Me., with whom Levenson & Levenson, Portland, Me., was on brief, for petitioner.

Richard Adelman, Washington, D. C., Attorney, with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Michael N. Sohn, Washington, D. C., Attorney, were on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This petition to review and set aside an order of the Labor Board stems from a representation election in which petitioners' employees chose the union [1] as their collective bargaining representative. Shortly thereafter, petitioners (hereinafter "the company") [2] filed objections to the election on the ground that certain pre-election conduct on the part of the union and a Board agent rendered the election and subsequent union certification invalid.[3] The company also requested that the Board grant a hearing on its objections.[4]

The Board overruled the company's objections, denied its request for a hearing and certified the union as bargaining representative.[5] The company refused to bargain with the union. Thereafter, upon complaint filed, the Board found that this refusal violated sections 8(a) (5) and (1) of the Act and entered its order against the company.[6] This petition followed. The Board countered with a request that its order be enforced in full. No jurisdictional issue is presented.[7]

The company admits its refusal to bargain but seeks to justify it by challenging

1. District Lodge No. 65, International Association of Machinists & Aerospace Workers, AFL-CIO, also known as I.A.M. Out of 322 valid votes counted 207 were cast for the union and 115 were cast against it.

2. Petitioners, parent and subsidiary, operate three furniture factories in Mayville, Falconer and Frewsburg, New York. It is undisputed that the production and maintenance employees in all three plants, the only employees involved in the election, constitute an appropriate unit.

3. The company's objections were referred to the Regional Director who made an administrative investigation. Witnesses were interviewed, sworn testimony taken and the parties were afforded an opportunity to present testimony. The Regional Director found that the company's objections "do not raise substantial or material factual issues with respect to conduct allegedly affecting the outcome of the election," and recommended that they be overruled.

4. It did not request a hearing on its objections until after the Regional Director filed his report. In excepting to this report the company alleged for the first time that its objections raised substantial and material issues warranting a hearing.

5. In adopting the Regional Director's recommendations the Board ruled that the "Employer's exceptions [to the Regional Director's Report] raise no material issues of fact or law warranting reversal of the Regional Director's recommendations."

6. In so finding, the Board adopted the decision of the trial examiner who granted summary judgment in favor of the General Counsel on the ground that the company made no representations that the evidence it would present at a hearing was previously unavailable or newly discovered; that this being the case, he was bound by the Board's findings on the representation proceeding and hence there was no litigable issue before him.

7. Although the alleged unfair labor practices occurred in New York where the

the validity of the election and subsequent union certification. As its first ground of attack the company points to a union leaflet allegedly containing material false statements mailed to the company employees at a time so close to the election that it claims the true facts could not be brought to their attention.[8] Specifically it objects to the following four representations which it contends interfered with the employees' freedom of choice: (1) that since the present management of the company came in, "incentive rates were slashed when you made money, more work was piled on, forcing some of your fellow employees to quit, working conditions deteriorated"; (2) the company does not pay for jury duty; (3) the employees pay for their own insurance and (4) the company' also objected to the side-by-side comparison of union wages and benefits with those of the company because the source of the union items listed was unidentified.

In reply, the company promptly posted notices on the bulletin boards at all three plants[9] which read as follows: "Another Union Lie! This Co. Does Pay For Jury Duty! * * * And Another Union Lie! Your Co. Pays 66% of Your Insurance." The company objects that on the afternoon before the election one Hirsch, a field examiner for the Board, ordered these notices removed and personally removed one of them. It contends that this conduct violated the legal rights of both

employer and employees [10] and warranted setting aside the election.

The union leaflet was prepared from information obtained at union organization meetings and from a company booklet distributed to new employees. In accordance with the administrative investigation the Board found that the statements that incentive pay was slashed and that the company did not pay for jury duty were untrue and that the assertion that the employees pay for their insurance was ambiguous, but that this did not interfere with the employees' freedom of choice.[11] The Board also adopted the Regional Director's findings that the union's comparison of benefits was factual in character, relevant, accurately represented contracts that the union had with other employers in the area and did not constitute a misrepresentation.

We note that the company does not challenge this factual finding. Rather, it objects to the union's "last minute" comparison of wages and benefits as "ambiguous and misleading." We think this is a somewhat technical objection. Reading the comparison from the standpoint of a company employee in the midst of an election campaign, we cannot say that it was misleading either in form or substance. It merely recited in graphic form what benefits this union claims it had gained for its members in other plants in the area and asked these employees to compare them with the nonunion benefits they had. The union did

---

company is incorporated and transacts business, it asserts that it also transacts business in Massachusetts and that this court has jurisdiction under section 10 (f) of the Act. The Board states that it is without knowledge concerning the assertion that the company transacts business in Massachusetts but accepts the company's statements to that effect.

8. The leaflet was mailed on April 13, 1966, and the election was held on April 15, 1966, under the supervision of the NLRB Regional Director.

9. Those notices were posted on the evening of April 13th at the Mayville plant and at the Falconer and Frewsburg plants on the morning of April 14, 1966.

10. Specifically, the company contends that this conduct violated the First Amendment as well as sections 7 and 8(c) of the National Labor Relations Act.

11. It did appear, however, that rumors were circulated among the employees that the incentive pay rates had been changed to their detriment. The investigation also revealed that since mid 1965 the company has given jury duty pay to employees who have completed a three months trial period, but the company booklet makes no mention of this and it was not generally publicized. As to the insurance, it was established that the company pays 66% of a group insurance program and the employees pay the balance.

not state that in any single contract it had achieved all of the benefits listed. We cannot say that this campaign propaganda was unfair or improper.

 We turn now to the other representations in the leaflet. To be sure, the statements with reference to incentive and jury duty pay were untrue and the representation that the employees paid for their own insurance, to say the least, was ambiguous, but in and of themselves these statements are not enough to set aside the election. It is too well established to require citation that representation elections will not be lightly set aside. A certain degree of inaccuracy and ambiguity is recognized as indigenous to campaign propaganda. N.L.R.B. v. Trancoa Chemical Corp., 303 F.2d 456, 458, 3 A.L.R.2d 879 (1st Cir. 1962). Also, as we said in that case at 461 the burden is on the objector to the election to show it was "sufficiently likely" that the employees were misled so "that it cannot be told whether they were or were not." From our examination of the record, we do not think the company met its burden here. The matter of whether the company slashed the incentive pay rates or paid for jury duty or insurance certainly was for the most part within the special knowledge of the employees themselves and they were in a position to recognize and evaluate these statements as election propaganda. Moreover, the company took advantage of its opportunity to correct two of the misstatements by posting specific replies at all three plants almost immediately after the leaflets were distributed. These notices remained posted up to the morning of the election.

In support of its position that the union leaflet impaired the employees' freedom of choice, the company relies on *Trancoa*, supra, but that case is clearly distinguishable on its facts. There, among other things, the union made false claims as to specific contracts it had and as to certain dangers to employees from radioactive materials used in the plant. These claims could not be properly evaluated by the employees. In addition, the company was not able to reply to the union's claims until about ten minutes before the election. This is a far cry from the situation here.

 Nor do we think it was at all likely that the agent's conduct just prior to the election violated the rights of either employer or employees, interfered with the employees freedom of choice or had any substantial effect on the outcome of the election. The administrative investigation showed that three days before the election this field examiner replaced a defaced election notice and ripped down three newspaper cartoons from a company bulletin board without protest from company officials who were present. Also, on the day before the election this Board agent saw one of the company notices replying to the union's leaflet on a bulletin board along the line of march to the polling area and ordered it removed, but when the company protested that similar signs were posted in all three plants, it was agreed that all these notices would remain posted until the morning of the election. Early on that morning the agent personally removed one of these notices. On none of the occasions above mentioned were any employees of the company present.

 Finally, the company complains that it was unlawfully deprived of a hearing on its objections. Under the rules of the Board, objections to representation elections are determined by administrative investigation as was done in this case. Post-election hearings are granted only where "substantial and material factual issues exist which can be resolved only after a hearing." 29 C.F.R. 102.69(c). The record shows that the company had full opportunity to offer evidence in the administrative investigation in support of its objections and that this evidence was considered by the Regional Director. In requesting the Board for a hearing on the representation proceeding the company did not propose to offer any newly discovered or previously unavailable evidence. It did not raise any new factual issues but merely persisted in its previous con-

tentions principally with reference to the union's comparison of benefits and the conduct of the Board's agent—objecting not to the findings but to the legal conclusions reached. Nor was the company entitled to relitigate these same issues at the unfair labor practice stage of the case. The Board is bound by its own prior determinations in the representation proceedings in the absence of newly discovered evidence. Hence, the Board was not required to grant a hearing and did not abuse its discretion in denying these requests. N.L.R.B. v. Tennessee Packers, Inc., Frosty Morn Division, 379 F.2d 172, 178 (6th Cir. 1967); N.L.R.B. v. Sun Drug Co., 359 F.2d 408, 414 (3d Cir. 1966).

Petition to review and set aside the Board's order is denied and said order may be enforced.