**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MAINE SUGAR INDUSTRIES, INC., Respondent.**

No. 7430.

United States Court of Appeals, First Circuit.

Heard March 3, 1970.

Decided May 15, 1970.

---

Warren M. Davison, Atty., Washington, D. C., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman and Jesse I. Etelson, Attys., Washington, D. C., were on brief, for petitioner.

Harold N. Mack, Boston, Mass., with whom Morgan, Brown, Kearns & Joy, Boston, Mass., was on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

On August 4, 1967, the American Bakery and Confectionary Workers Int'l Union, Local 264, AFL–CIO, petitioned for certification as the bargaining representative for a proposed unit of some 100 permanent production and maintenance employees of the Maine Sugar Industries' plant in Easton, Maine. At the subsequent unit determination hearing, the Company urged that some 300 seasonal production and maintenance employees should also be included, but because there was insufficient evidence that the seasonal workers had a high expectancy of being rehired,[1] the Board

---

1. The plant, under construction since 1964, began production in January 1967 with an 18 day "season" of processing sugar beets, after which many employees were laid off. In July, some 75 seasonal workers were hired to refine raw cane sugar, a substantial—though undetermined—number of whom had worked during January. By the time of the unit determination hearing in August 1967, the Company had about 100 permanent employees, with an expectation of hiring some 300 seasonal employees for the upcoming 6–8 week sugar beet season. The Company projected that the season would become 14 weeks long in a few years and

determined that they should not be included in the bargaining unit. 169 NLRB No. 31 (1968).

On the day prior to the election in February 1968, the Union sent a letter to all unit employees, beginning with a mention of the achievements of "American Unions" and including a list of the benefits recently obtained through union representation at the Revere Sugar Refinery in Boston, Massachusetts. The Company had no opportunity to point out that those benefits had *not* been obtained by the American Bakery Union but by another union not involved in the pending election. On the following day the Union won 65 to 32.

After the Company's objections to the conduct of the election—based on the allegedly misleading election-eve letter— were rejected by the Regional Director in March, the Union was certified the exclusive bargaining representative for the unit. The representation proceeding ended on April 3, 1968, when the Board denied the Company's request for review of the Regional Director's decision. The Company's subsequent refusal to bargain gave rise to an unfair labor practice complaint by the General Counsel. The Company's proffer at the unfair labor practice hearing of "previously unavailable or newly discovered" evidence concerning the propriety of the bargaining unit was rejected as untimely by the Trial Examiner. On motion by General Counsel, summary judgment was granted on the unfair labor practice complaint. The Board affirmed the summary judgment, agreeing that the proffer of "new evidence" was untimely but apparently holding that even if such evidence had been admitted, the exclusion of seasonal workers was not inappropriate. 174 NLRB No. 96 (1969).

The Board's petition for enforcement of its order to the Company to bargain with the Union raises two points of contention: the legality of the Union's election-eve letter, and the propriety of the bargaining unit. The former, while dispositive in that our conclusion of illegality requires that the election be set aside, requires less discussion. The second issue requires more elaboration and may be thought to be technically unnecessary. But if a new election is sought and directed, the issue will again arise; the problem, having been fully briefed and argued, seems serious enough for discussion at this time.

We do not consider the Company's argument that the Board erred in failing to make its own determination concerning the legality of the letter. *See* Pepsi-Cola Buffalo Bottling Co. v. N.L.R.B., 409 F.2d 676, 679–681 (2d Cir.1969), cert. denied, 396 U.S. 904, 90 S.Ct. 219, 24 L.Ed.2d 181 (1969). We are satisfied that the Company waived that objection by its failure to present the objection to the Board as required by section 10(e), NLRA.

As to the letter itself, we observe that it is always a dangerous game for a union to pass off another union's work as its own by campaign literature which lists the benefits obtained at another plant without making clear that those benefits were negotiated by another union. In Zarn, Inc., 170 NLRB No. 130 (1969), the Board ordered a new election where such a letter conveyed the erroneous impression—through reiteration of the phrase "the Union"—that the petitioning union had negotiated the listed benefits.

In our case, the initial reference to "American Unions" and their achieve-

that the 300 seasonal workers would have a high expectancy of being rehired each year, thus creating a "community of interest" between the seasonal workers and the permanent workers who did essentially the same work.

In excluding the seasonal workers from the unit, the Board stated that it was

"unable to find on the basis of the July recall alone that a sufficiently large number of temporary seasonal employees has a demonstrable expectation of being rehired."

For that reason, the seasonal workers were excluded.

ments renders it suspect as a deliberate invocation of the first word in the petitioning union's name. The assertion regarding "American Unions," with the "U" capitalized, though it is not done so elsewhere in the flyer in referring to unions generally, appears in the very first line following the heading, "American Bakery and Confectionary Workers." That the reference is to a different union is far from obvious. Such a tactic might be overlooked in an election campaign involving workers with a long and varied union background. This campaign, however, in an industrial enterprise new to the area, involved employees without such a background and thus more likely to be misled. Moreover, subsequent generic references to the accomplishments achieved in the specific industry through "union representation" comes too close to *Zarn* to be distinguished by lay employees, lacking a lawyer's eye. While the writer of this opinion would, with some misgivings, defer to the judgment of the Regional Director that the letter did not fatally taint the election, the majority of the court, noting that the Director did not even appear to recognize the problem, feel that the bounds of discretion were exceeded and that the election must be set aside.

█ If a new election were to be held, the Company's objection to the composition of the bargaining unit would remain. It is, in our view, a well founded objection, and one with implications for orderly procedure in representation cases. It is well settled that an employer may, as a defense to a refusal to bargain complaint, challenge the composition of the bargaining unit. *E. g.*, Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 154, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); Boire v. Greyhound Corp., 376 U.S. 473, 476–477, 84 S.Ct. 894, 11 L.Ed.2d 849

(1964). However, an employer cannot offer "new evidence" concerning the propriety of the unit if such evidence could have been presented during the course of the representation proceeding. Pepsi-Cola Buffalo Bottling Co. v. N.L. R.B., *supra*, 409 F.2d at 681; N.L.R.B. v. Douglas County Electric Membership Corp., 358 F.2d 125, 129 (5th Cir.1966). Any other rule would encourage an employer to hold back relevant evidence in hopes of litigating the unit determination in piecemeal fashion. The difficult problem for our case is whether the Company could have presented its new evidence before the representation proceeding was concluded in April 1968.

The Company's "new evidence" was that 80 per cent or more of the 1967 seasonal employees had been employed during 1966 and that 90 per cent of the peak work force in November 1967 consisted of recalled employees. While this evidence obviously could not have been offered at the unit determination hearing in August 1967, we are satisfied that it was available to the Company at least by January 1968.

It appears, however, that the appropriateness of the bargaining unit is not a matter which may be raised in support of objections to an election or in a request to review since such issue is unrelated to the conduct of the election (*see* 29 C.F.R. § 102.69(c)); thus, any Company attempt to present its new evidence during the post-election hearing in March would have been excluded as irrelevant to the questions then at issue. Moreover, the Board's published rules make no provision for reconsideration or reopening of a Board order in a representation proceeding,[2] despite such a provision for unfair labor practice orders. *See* 29 C.F.R. § 102.48(d). The Company's motion for reconsideration of the Board's action in the representation proceeding was made in August 1968

---

2. Had the unit determination in this case been made by the Regional Director, a request for Board review *might* have provided an avenue for presentation of new evidence. 29 C.F.R. § 102.67(b) and

(c). However, this unit determination was transferred to the Board for initial decision, 29 C.F.R. § 102.67(h), thus apparently precluding any such request for review.

only after such course had been suggested by the Trial Examiner and cannot properly be used to suggest that the Company was aware of the availability of such motion since January 1968.[3]

■ The Board concedes the lack of any provision authorizing motions to reopen or reconsider a Board order in a representation proceeding but contends that the Board has frequently allowed such motions.[4] However, we are aware of only one decision where a party's failure to make such motion was used against him, as the Board seeks to use such failure here. Westinghouse Electric Corp., 171 NLRB No. 164 (1968). Even were knowledge of a ruling in such an opinion to be chargeable to the Company, it would be of no avail to the Board here, *Westinghouse* postdating the end of the representation proceeding by several months. Moreover, we are unwilling to charge parties with knowledge of all the procedural niceties tangentially enunciated in the Board's decisions when the Board's rules and regulations—29 C.F.R. §§ 101.1 et seq., 102.1 et seq.—purport to set forth the complete body of applicable procedures.

■ Since the Company proffered its "new evidence" at the first opportunity

contemplated by the Board's present rules and regulations and since such evidence was clearly germane to the appropriateness of the unit, the Trial Examiner was in error in refusing to admit it. The Board on review, however, apparently decided that even if such evidence had been admitted, the unit without seasonal employees was still not inappropriate. 174 NLRB No. 96 (1969).

■■ Although the Board's only expressed reason in its first decision for excluding seasonal workers—insufficient evidence of high expectancy of recall—was substantially overcome by the Company's new evidence, we do not say that the exclusion of seasonal workers must therefore be inappropriate. There may be additional, as yet unarticulated reasons why such exclusion is still appropriate. As we have said many times, the Board enjoys a broad discretion in such determinations. *E. g.*, Banco Credito, etc. v. N.L.R.B., 390 F.2d 110, 112 (1st Cir.1968), cert. denied, 393 U.S. 832, 89 S.Ct. 101, 21 L.Ed.2d 102 (1968). However, the incomplete articulation of reasoning here, when combined with a history of Board adherence to union requests concerning the inclusion or exclusion of seasonal employees,[5] satisfies us

---

3. In his Motion for Summary Judgment addressed to the Trial Examiner, the General Counsel also argued that the Company could have presented its new evidence by a Unit Clarification Petition, 29 C.F.R. § 101.17. This contention was not relied on by either the Trial Examiner or the Board in granting the motion, and was not reiterated in the Board's briefs submitted to us, which seemed to concede the lack of any formal rule providing for reopening of Board unit determinations. Such petition presupposes the existence of a certified representative of a bargaining unit, and thus could not have been utilized in this case until April 1968. Moreover, we find no indication that such petition was intended or has been used as a method for obtaining review of the propriety of a bargaining unit just created. We therefore attach no significance to the fact that the Company did not avail itself of this doubtful procedure.

4. *See, e. g.*, Daniel Construction Co., Inc., 161 NLRB 52 (1966); Dewey Portland

Cement Co., 137 NLRB 944 (1962); Swift & Company, 127 NLRB 87 (1960); Benjamin Franklin Paint and Varnish Co., 118 NLRB 1007 (1957).

5. The parties presented several cases where the Board has ruled with regard to the exclusion or inclusion of seasonal workers. The Union points out that in every case where the Board excluded seasonal workers, the union involved had requested such exclusion. United Foods, Inc., Dulaney Foods Division, 174 NLRB No. 18; Franklin County Sugar Co., 92 NLRB 1341; Bear Creek Orchards, 87 NLRB 1348; The St. Mary's Packing Co., 72 NLRB 596; Hunt Foods, Inc., 68 NLRB 800. Similarly, in each case that the union requested inclusion, the Board included seasonal workers. Kelly Brothers Nurseries Inc., 140 NLRB 82; California Vegetable Concentrates, Inc., 137 NLRB 1779; The F. A. Bartlett Tree Expert Co., 137 NLRB 501; Saunders Tool and Die Co., 101 NLRB 263; Libby, McNeill & Libby, 90 NLRB 279;

that in the event of a new election the unit determination issue must receive further consideration and articulation.

Enforcement denied.

California Almond Growers Exchange, 73 NLRB 1367. The Board offered us no cases contrary to this pattern.

Moreover, the cases indicate that expectancy of recall has not been mentioned as a factor in several of the cases, and that in a few of them, seasonal workers were included in the absence of any evidence of a high expectancy of recall.