NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

O. S. WALKER COMPANY, INC.,
Respondent.

No. 72-1181.

United States Court of Appeals,
First Circuit.

Argued Sept. 8, 1972.

Decided Nov. 15, 1972.

---

6. *See* note 1, above.

Joseph E. Mayer, Atty., Washington, D. C., with whom Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Jonathan G. Axelrod, Atty., Washington, D. C., were on brief, for petitioner.

Duane T. Sargisson, Worcester, Mass., with whom Warren C. Lane, Jr., James E. Wallace, Jr., and Bowditch, Gowetz & Lane, Worcester, Mass., were on brief, for respondent.

Before COFFIN, Chief Judge, Mc-ENTEE and HAMLEY,* Circuit Judges.

HAMLEY, Circuit Judge.

The National Labor Relations Board has petitioned for enforcement of its unfair labor practice order issued against O. S. Walker Company, Inc. For the reasons stated below we will enforce the order.

The United Steelworkers of America, AFL–CIO, won a consent representation election involving the Company's production and maintenance employees at Worcester, Massachusetts. The vote was twenty-four to twenty, with three ballots challenged. The Company filed timely objections to the conduct of the election, which were rejected in a report by the Board's Acting Regional Director (Director). The Company then filed with the Board timely exceptions to the Director's report. While these exceptions were pending, the Company submitted to the Board supplementary evidence and asked for a reopening of the investigation and a hearing.

The Board thereafter issued its decision denying the request for a reopening of the investigation and hearing, rejecting the Company's exceptions, adopting the Director's findings and recommendations, and certifying the Union as the exclusive representative of the employees for the unit in question.

The Company refused to bargain with the Union and an unfair labor practice proceeding was commenced. Over the Company's objection, the Board granted the motion of its General Counsel for summary judgment and entered findings and conclusions of law determining that the Company's refusal to bargain with the Union constituted an unfair labor practice within the meaning of section 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1). The Board ordered the Company to cease and desist its refusal to bargain with the Union, and to post the usual notices. This enforcement proceeding was then instituted.

In resisting enforcement of the Board's order the Company relies upon contentions it had advanced before the Board. The first two of these pertain to assertedly material pre-election misrepresentations by the Union which influenced the employees to vote for Union representation. These asserted misrepresentations had to do with the Company's pension plan and its medical insurance program. All of these asserted misrepresentations were made at a Union meeting held on the night before the election, attended by from thirteen to seventeen of the approximately forty-seven employees eligible to vote.

According to the Director's report, the evidence before him showed that at this meeting a Union representative said that, under his interpretation of the pension plan, in order to be eligible for inclusion in the plan, an employee had to have attained his thirtieth birthday. The representative said that his understanding of the plan was based on his interpretation of an example given on page 11 of a Company booklet.

This was unquestionably an erroneous statement. The example on page 11 of the booklet deals only with a hypothetical employee who has attained his thirtieth birthday. There is no minimum age requirement for inclusion in the Company's pension plan.

The Director concluded, however, that the subject of the pension plan, which had been in effect among unit employees since 1953, was one about which the employees themselves could be expected to have as much knowledge as the Union, and as to which they could not have been expected to give any special credence to the Union's pronouncements. The Director recounted the extensive efforts the Company had made to acquaint employees with the details of the plan, including one such effort while the election campaign was in progress.

* Of the Ninth Circuit, sitting by designation.

On this ground, the Director held that the misrepresentation concerning the necessity of attaining the age of thirty years in order to be eligible for inclusion in the pension plan did not warrant setting aside the election.

Another asserted misrepresentation concerning the pension plan, made at the Union meeting, was to the effect that Company employees with three years of service did not have any accrued pension credits. Apparently one Company witness testified before the Director that such a statement had been made.[1] However, another Company witness testified that the Union representative stated at the meeting that an employee "could" work for the Company for three years and have no credit under the plan. The Union representative testified that he stated at the meeting that, in order to be eligible for inclusion in the plan, depending on his date of hire, it was possible for an employee to have a waiting period of up to three years before being included in the plan.

The Director apparently accepted, as true, this latter version of what was said at the meeting, and upon analyzing the plan, determined that it was a substantially correct statement. There was an inaccuracy of not over one day. The Director concluded that, at most, this was a misrepresentation of the type which the Board and courts have found to be too insubstantial to warrant setting aside an election.

Concerning asserted misrepresentations having to do with the Company's medical insurance program, we note at the outset that any such misrepresentations were made, not by a Union representative, but by an enrollment representative of Massachusetts Blue Cross/Blue Shield.[2] For approximately ten years prior to December 20, 1970, the unit employees in question had been covered by a Blue Cross plan. Effective on that date, however, the Company canceled that coverage and instituted a new medical plan written by the Paul Revere Life Insurance Company. During his fifteen-minute talk at this meeting, the Blue Cross representative distributed a mimeographed leaflet comparing the Paul Revere and Blue Cross plans, and a one-page printed leaflet highlighting the coverage provided by the Blue Cross plan.[3]

The Company contends that the mimeographed leaflet contained at least eight substantial misrepresentations which in effect understated the benefits provided in the Paul Revere plan and overstated the benefits available under the Blue Cross plan. In the proceedings before the Director, the parties presented detailed documents prepared by the two insurance companies which tend to support or undermine, as the case may be, the Company's charge that this leaflet contained material misrepresentations.

The Director, however, did not undertake to determine the extent to which, if any, this leaflet contained misrepresentations.[4] The Director deem-

---

1. The Director's report states, in several places, that certain witnesses "testified" or "testifies." We assume that this means there was an oral evidentiary hearing before the Director, but it would be sufficient if such evidence consisted of depositions or affidavits.

2. It is true, however, that this Blue Cross representative was introduced at the meeting by a Union representative.

3. Several copies of the mimeographed leaflet were seen at the plant the next morning, having apparently been taken there by employees who attended the meeting.

4. Nevertheless, the Director added the following footnote to his report, commenting upon the extent to which there were misrepresentations:

"The preponderance of the evidence indicates that, at the June 15 meeting, Thompson orally corrected the statement on Exhibit A that the Revere Plan provides no dental coverage. It is also noted that some of the specifics of Blue Cross coverage alleged to be misrepresented in Exhibit A are set forth with less ambiguity in Exhibit B, which was also distributed at the June 15 meeting. Some of the other alleged misrepre-

ed this unnecessary because of the considerable effort the Company had made, as recounted in the report, to acquaint the unit employees with the details of the coverage provided by the Paul Revere plan. The Director concluded that the employees were in a position to evaluate for themselves the written and oral statements made by the Blue Cross representative at the Union meeting referred to above. It was the Director's view that, under the circumstances, the employees "could not have been expected to lend any special credence, wholly without reservations, to the statements of . . . a representative of a rival insurance company."

■ Representative elections, challenged because of asserted pre-election misrepresentations, will not be lightly set aside. A certain degree of inaccuracy and ambiguity is recognized as indigenous to campaign propaganda. In order to warrant the setting aside of a representative election on this ground "the burden is on the objector . . . to show it was 'sufficiently likely' that the employees were misled so 'that it cannot be told whether they were or were not.'" Baumritter Corp. v. N. L. R. B., 386 F.2d 117, 120 (1st Cir. 1967); N. L. R. B. v. Trancoa Chemical Corp., 303 F.2d 456, 461 (1st Cir. 1962). Since, in the first instance, this determination rests within the broad discretion of the Board, the Board's determination is to be set aside only for an abuse of discretion. See, N. L. R. B. v. Wyman-Gordon Co., 394 U.S. 759, 767, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969); N. L. R. B. v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946); Surprenant Mfg. Co. v. Alpert, 318 F.2d 396, 399 (1st Cir. 1963).

The Board will set aside an election "only where there has been a misrepresentation . . . which involves a substantial departure from the truth, at a time which prevents the other party or parties from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on the election." Hollywood Ceramics Co., Inc., 140 NLRB 221, 224 (1962). All of these elements must be present before an election will be set aside. See, N. L. R. B. v. Cactus Drilling Corp., 455 F.2d 871 (5th Cir. 1972).

■■ Applying this test to the facts of this case, we conclude that the Board did not abuse its discretion in failing to set aside the election. The third element of the *Hollywood* test is the reasonably expected significance of the impact of the alleged misrepresentations on the election. Misrepresentations have an insignificant impact when

(1) the employees possess independent knowledge with which they can evaluate the statements, Hollywood Ceramics, *supra*; *see also*, N. L. R. B. v. Maine Sugar Industries, Inc., 425 F.2d 942, 945 (1st Cir. 1970), or

(2) the employees have no reason to believe that the speaker had any special knowledge on which they should rely. N. L. R. B. v. A. G. Pollard Co., 393 F.2d 239, 242 (1st Cir. 1968); N. L. R. B. v. Southern Foods, Inc., 434 F.2d 717, 720 (5th Cir. 1970).

As indicated above, the pension plan had been in effect since 1953, and the Company had made extensive efforts to acquaint the employees with its terms. This finding provided the Director with a sound factual basis for his conclusions, shared by the Board, that the employees were sufficiently sophisticated concerning the pension plan so that it is unlikely that the erroneous statements swayed the election. Also, there was no reason for the employees to believe that the Un-

---

sentations appear to fall within that category of 'exaggerations, inaccuracies,' and 'partial truths' which the Board has held do not warrant setting aside an

election. Tuttle & Kift, Inc., 118 NLRB 125, 127. See also the cases cited *supra* at footnote 8."

ion representative had any special knowledge concerning the pension plan.

Concerning the asserted misrepresentations by the Blue Cross representative as to the coverage of the Paul Revere and Blue Cross health insurance plans, the Director found that the Company had gone to some effort to acquaint the employees with the Paul Revere plan and to compare it to the Blue Cross plan. The Director therefore had a factual basis for concluding that, with respect to these alleged misrepresentations, the employees had independent knowledge with which to evaluate the Blue Cross representative's statements and that these statements did not have a significant impact on the election.

The Company's remaining arguments in opposition to enforcement of the Board order have to do with the Board's denial of a post-election hearing on the Company's objections to the election. This, says the Company, denied it due process of law.

As indicated in note 1 above, it is not clear from the record before us whether witnesses for the Company and the Union testified orally before the Director or only by way of deposition or affidavit. In its brief, the Company states that it made "repeated" requests for a hearing. But the record references given in support of this statement call attention only to requests for a hearing made in the Company's response to the General Counsel's motion for summary judgment and in connection with the Company's request to the Board that the case be reopened to consider new evidence.

A Board regulation, the validity of which is not challenged by the Company, provides that in a case such as this, involving a consent election held pursuant to 29 C.F.R. § 102.62(b), if exceptions are filed to the report of the Regional Director on objections to the conduct of the election, and it appears to the Board that such exceptions raise "substantial and material factual issues," the Board may direct the Regional Director or other agent of the Board to institute such a hearing. *See* 29 C.F.R. § 102.69(e).

In order to raise "substantial and material factual issues" justifying such a hearing, an objecting party must supply the Board with specific evidence which prima facie would warrant setting aside the election. N. L. R. B. v. O. K. Van Storage, Inc., 297 F.2d 74, 75 (5th Cir. 1961). Objections which merely question the interpretations, inferences and legal conclusions reached from undisputed facts by the Regional Director fall short of meeting this standard. Baumritter Corp. v. N. L. R. B., 386 F. 2d 117, 120–121 (1st Cir. 1967).

With regard to the claimed misrepresentations, the Company calls attention to one instance in which there was a dispute in the testimony before the Director. One of the Company's two witnesses testified that, at the Union meeting, a Union representative stated that "no one got any credit under the [pension] plan until he had worked for the Employer for three years." The other Company witness, and the Union representative testified, in effect, that what the Union representative said was that depending on the date of hiring, it was possible for an employee to have a waiting period of up to three years before being included in the plan.

In our opinion this variance in testimony does not present a substantial and material factual issue which required the Board to order a hearing, even assuming that there had not already been a full hearing before the Director.

The other factual issue to which the Company refers relates to the likelihood that the unit employees were swayed to vote for the Union because of the claimed misrepresentations. The company made no offer to prove that a particular individual employee was in fact thus influenced to vote for the Union. *See* N. L. R. B. v. Singleton Packing Corp., 418 F.2d 275, 280 (5th Cir. 1969), cert. denied, 400 U.S. 824, 91 S.

Ct. 47, 27 L.Ed.2d 53 (1970). In the absence of such an offer of proof the Director was entitled to draw reasonable inferences from the evidence submitted and, as stated above, we believe it was reasonable for him to conclude that, in all likelihood, the employees were not improperly influenced.

We find the assertedly newly-discovered evidence upon which the Company relies as a reason for granting an evidentiary hearing so trivial in nature as hardly to deserve discussion. The Director stated in his report that at the Union meeting there was no assertion that if the Union won the election it would attempt to have the Blue Cross plan reinstated, but only that the Company had switched to the Paul Revere plan to cut expenses.

The Company's "supplementary evidence" consisted of two letters. The first was written five days after the Director's report, by a Blue Cross official to another company explaining the enrollment representative's appearance at the Union meeting. The purport of this letter was that, contrary to the observation in the Director's report, referred to above, Blue Cross was, at the meeting, seeking to create a climate which would result in reinstating Blue Cross coverage for the Company's employees in the unit in question. The second letter submitted as "supplementary evidence" was a letter written by the Massachusetts Commissioner of Insurance to the chairman of the Company, dated almost three months after the Director's report, indicating that the Commissioner would investigate the Company's complaint against Blue Cross, based on what happened at the Union meeting.

Measured by the tests referred to above, we conclude that the Company has made no showing entitling it to a Board order setting the matter for hearing.

The cease and desist order will be enforced.