**THIEM INDUSTRIES, INC.,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent.**

**No. 72-2881.**

United States Court of Appeals,
Ninth Circuit.

Dec. 18, 1973.

Samuel P. King, District Judge, dissented.

William F. Spalding (argued), of Gibson, Dunn & Crutcher, Los Angeles, Cal., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., Michael Wolly (argued), Washington, D. C., Abraham Siegel, Director, Region 31, NLRB, Los Angeles, Cal., for respondent.

Before CHAMBERS and BARNES, Circuit Judges, and KING, District Judge.*

BARNES, Circuit Judge:

In this proceeding the Labor Board seeks enforcement, and the petitioner company seeks to review, a Board order issued October 27, 1972, finding that the company refused to bargain with International Association of Machinists and Aerospace Workers, AFL–CIO (199 NLRB No. 138), certified as the employees' representative. The Board, without benefit of a hearing, overruled petitioner's Objections to Conduct Affecting Results of Election, which alleged that the union had interfered with the free choice of the employees by material misrepresentation of fact on the eve of the election.

The election was held August 26, 1971. The challenged conduct was the publishing and distribution by the union of two bulletins, one on August 23, 1971,[1a] and

---

* The Honorable Samuel P. King, United States District Judge, Honolulu, Hawaii, sitting by designation.

1a.     (Letterhead of International Association of Machinists
        and Aerospace Workers — District Lodge No. 94
                    214 South Loma Drive
                    Los Angeles, Calif. 90026
                    Phone (213) 483–6630)
                    August 23, 1971

All Employees Theim Industries, Inc.

Thursday, August 25th, is *your* day—not the Union's day—not the Company's day—*but your day.*

It's *your* election—it's *your* future—it's *your* Union and it will be *your* contract after *your* "YES VOTE" on Thursday.

We know that all of you are just as concerned with the Executive Wage & Price Freeze as we are, consequently, we will advise you as to all the information we have on the order at this time.

    1. We believe the order to be unconstitutional in that it discriminates against the wage earner and does not freeze profits and/or interest rates.

    2. We believe that we can prove a wage inequity in a newly organized shop before the Emergency Preparedness Board (national statistics prove that non-union shops are on the average of $1.16 per hour behind Union shops).

    3. If the freeze goes beyond the ninety (90) days we are sure a board will be set-up to pass on all wage and fringe benefits and a Union would be most helpful to you.

    4. If the freeze ends within the ninety (90) days, it will take approximately that length of time to be certified, and to bargain for the kind of Collective Bargaining Agreement you expect to attain.

A *"YES VOTE"* will be very important to *you* and *your* family on Thursday, so let's make it a BIG WIN—and REMEMBER
YOU MAY LIVE WITHOUT A UNION—BUT NOT SO WELL.

        Organizing Committee
        District Lodge #94, I.A.M. & A.W.
        214 South Loma Drive
        Los Angeles, California 90026
        Dale Anderson
        Bob Fleming
DA:jls        Bill Lopez
opeiu#30      Bill Meyers
afl-cio

one on August 25, 1971.[1b] These are quoted verbatim as notes to this opinion, 1a and 1b, respectively.

Two questions are presented to us. One: Did these publications contain false and misleading representations; and Two: If so, were the representations of a nature which had a material and substantial impact on the judgment of the employees?

The basis for the company's objection to Bulletin of August 23, 1971 (Note 1a), was contained in the portion in parenthesis in paragraph 2 of the bulletin: "(National statistics prove that nonunion shops are on the average of $1.16 per hour behind union shops)."

The basis for the company's objection to Bulletin of August 25, 1971 (Note 1b), was the portion reading:

". . . If you have followed the recent settlements of labor agreements in the newspapers, they went to wit for Union members:

| | |
|---|---|
| Workers in the Rail Industry | 41% Wage Increase |
| Workers in the Steel Industry | 33½% Wage Increase |
| Workers in the Auto Industry | 33½% Wage Increase |
| Workers in the Trucking Industry (Mechanics) | 37% Wage Increase |
| Workers in the Can Industry | 35% Wage Increase |
| Workers in the Airline Industry | 35% Wage Increase |

"The above represents only a fraction of the members represented by the International Association of Machinists and Aerospace Workers."

In its Decision and Certification, the Board found that the evidence concerning the August 23, 1971 representation did not demonstrate that such statement was false, but only that the union had made "an unsubstantiated claim." This was because the union stated it re-

1b. (District Lodge No. 94—International Association of Machinists and Aerospace Workers—AFL-CIO

NEWS BULLETIN)

*TO:* All Bargaining Unit Employees at—*THIEM INDUSTRIES, INC.* While it is usually not our practice to get into a letter-writing contest with the management, we think that the three *"Love Letters"* from H. J. Thiem *need to be exposed for what they are!*

Ask yourself why Mr. Thiem wants you to vote NO UNION? We will tell you why! *Money*—and that's the name of the game. If you have followed the recent settlements of labor agreements in the newspapers, they went to wit for Union members:

Workers in the Rail Industry .........................41% Wage Increase
Workers in the Steel Industry ......................33½% Wage Increase
Workers in the Auto Industry .......................33½% Wage Increase
Workers in the Trucking Industry (Mechanics) ..........37% Wage Increase
Workers in the Can Industry ........................35% Wage Increase
Workers in the Airline Industry ......................35% Wage Increase

The above represents only a fraction of the members represented by the International Association of Machinists and Aerospace Workers—but it is the biggest reason the management wants you to vote No.

Vote for your own best interest—

*VOTE YES*

and put industrial democracy to work—

You have only one way to move and that is *UP.*

*YOU CAN LIVE WITHOUT A UNION—BUT NOT SO WELL.*

ORGANIZING COMMITTEE

DISTRICT LODGE #94, I.A.M.A.W.

Dale Anderson
Bob Fleming
Bill Lopez
Bill Meyers

DA:ls
opeiu#30
afl-cio
8/25/71

lied on the BNA[2] Union Labor Report Weekly Newsletter of May 20, 1971. The employer supplied a copy of this newsletter to the Regional Director, claiming that it contained no basis for the union's representation that ". . . national statistics prove that non-union shops are on the average of $1.16 per hour behind union shops."

We have some difficulty in following the Board's conclusion that there was no falsity to the statement contained in the August 23, 1971 bulletin, when the newsletter, relied on by the union, contained nothing to support the representation made by the union, and claimed by the union to be, *information* and *"substantiated proof* by reason of national statistics."

However, we have no difficulty in considering the second or August 25, 1971 Bulletin, distributed by the union at the end of the day prior to election day. It unequivocally asserts that all of the cited increases in wages went to members of the union which was the subject of the vote, and that that union was responsible for achieving such wage increases.

The Board concedes that the August 25, 1971 Bulletin was "capable of a construction" that the one union involved (IAMAW), was responsible for the large wage increases, and considered it "a considerable exaggeration of the facts," (R. 55, lines 9–11). Actually the union's claim was false in five of the six cited industry settlements.

We concede it is sometimes difficult to determine the proper line to be drawn between an admitted exaggeration, *i. e.*, admittedly going a little beyond the true facts, and a falsehood. But we submit it should not be difficult to determine whether such an admitted misrepresentation of fact was serious enough to "unduly" influence employees, or have "sufficient" voter impact.

We here adopt by reference the careful analysis recently stated in the case of NLRB v. Millard Metal Service Center, Inc., 472 F.2d 647 (1st Cir. 1973).[3]

In the *Millard Metal* case, the issue was whether a 42 cent per hour increase in wages was "an insubstantial misrepresentation." It was held to be a substantial misrepresentation with suffi-

2. "BNA" refers to Bureau of National Affairs, Washington, D.C.

3. "Representative elections, challenged because of asserted pre-election misrepresentations, will not be lightly set aside. A certain degree of inaccuracy and ambiguity is recognized as indigenous to campaign propaganda. In order to warrant the setting aside of a representative election on this ground 'the burden is on the objector . . . to show it was 'sufficiently likely' that the employees were misled so 'that it cannot be told whether they were or were not.' Baumritter Corp. v. N.L.R.B., 386 F.2d 117, 120 (1st Cir. 1967); N.L.R.B. v. Trancoa Chemical Corp., 303 F.2d 456, 461 (1st Cir. 1962). Since, in the first instance, this determination rests within the broad discretion of the Board, the Board's determination is to be set aside only for an abuse of discretion. (Citations omitted.)

"The Board will set aside an election 'only where there has been a misrepresentation . . . which involves a substantial departure from the truth, at a time which prevents the other party or parties from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a signifi-

cant impact on the election.' Hollywood Ceramics Co., Inc., 140 NLRB 221, 224 (1962). All of these elements must be present before an election will be set aside. *See*, N.L.R.B. v. Cactus Drilling Corp., 455 F.2d 871 (5th Cir. 1972). . . . Misrepresentations have an insignificant impact when

(1) the employees possess independent knowledge with which they can evaluate the statements, *Hollywood Ceramics, supra*; *see also*, N.L.R.B. v. Maine Sugar Industries, Inc., 425 F.2d 942, 945 (1st Cir. 1970), or

(2) the employees have no reason to believe that the speaker had any special knowledge on which they should rely. N.L.R.B. v. A. G. Pollard Co., 393 F.2d 239, 242 (1st Cir. 1968); N.L.R.B. v. Southern Foods, Inc., 434 F.2d 717, 720 (5th Cir. 1970)."

N.L.R.B. v. O. S. Walker Company, Inc., 469 F.2d 813 (1st Cir. 1972).

"We do not depart from these criteria. We find, however, in applying them to the facts of the instant case, that the Board's order must be vacated and the certification set aside."

NLRB v. Millard Metal Service Center, Inc., *supra*, 472 F.2d at 650.

cient impact to unduly influence employees.

In the present case we find the following factors:

1. The misrepresentation was made at the last possible moment prior to the election, and no effective reply by employer was possible.[4]

2. Wage rate issues are of particular sensitivity to employees.[5]

3. The misrepresentation went to the union's special knowledge in a subject the employees might reasonably expect the union to have.[6]

4. "A flat misrepresentation" cannot be excused "on the ground that the deceived party, bearing no duty to do so, could have investigated and learned the truth." [7]

5. "It is always a dangerous game for a union to pass off another union's work as its own. . . ." [8]

6. "Assertions about union benefits must be held to a fairly close standard of accuracy since a union's statements about its own contracts sound authoritative. Employees are liable to accept them uncritically." [9]

Finally, the Board urges that the misrepresentation as to six other industries, "so unlike" that in which the employees here were engaged, would not be likely to cause the employees to believe that the union could automatically provide the same kind of wage settlement on their behalf. (Respondent's Brief, p. 13.) The short answer to that is if this be true, why would the union use such misrepresentation of facts, at the last moment, to dazzle employees with suggesting a 33½% wage increase? Can it be

asserted the non-union employees knew more about the facts than the union itself?

We conclude the Board's findings are not supported by substantial evidence on the record considered as a whole.[10]

We decline to enforce the Board's order, and we vacate the order of the Board.

SAMUEL P. KING, District Judge, dissents, and would enforce the Board's Order.

4. Hollywood Ceramics Co., 140 NLRB 221, 225 (1962).

5. Collins & Aikman Corp. v. NLRB, 383 F.2d 722–728 (4th Cir. 1967) ; NLRB v. Producers Cooperative Association, 457 F.2d 1121, 1126–1127 (10th Cir. 1972) ; NLRB v. Southern Foods, 434 F.2d 717 (5th Cir. 1970).

6. NLRB v. G. K. Turner and Associates, 457 F.2d 484, 487 (9th Cir. 1972) ; NLRB v. Winchell Processing Corp., 451 F.2d 306 (9th Cir. 1971).

7. Cross Baking Co. v. NLRB, 453 F.2d 1346, 1349 (1st Cir. 1971).

8. NLRB v. Maine Sugar Industry, Inc., 425 F.2d 942, 944–945 (1st Cir. 1970).

9. NLRB v. Winchell Processing Corp., 451 F.2d 306, 308–309 (9th Cir. 1971).

10. Gallenkamp Stores v. NLRB, 402 F.2d 525, 535 (9th Cir. 1968).